# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

BRENDA HAMILTON,
JAMES HAMILTON, and
DENNIS LARAMORE,

       Plaintiffs,

v.                                                                  CASE NO.  5:16cv19-RH/GRJ

LOUIS S. ROBERTS, III, in his
official capacity as Sheriff,
JACKSON COUNTY, FLORIDA,
and STEPHEN SMITH, in his
individual capacity,

       Defendants.

_____/


## ORDER GRANTING SUMMARY JUDGMENT


The plaintiffs assert claims against a sheriff and a deputy. The claims

include failure to investigate alleged crimes, false arrest, use of excessive force,

and unconstitutional search and seizure. The defendants have moved for summary

judgment. In response, the plaintiffs have abandoned the failure-to-investigate and

false-arrest claims. This order grants summary judgment on the search-and-seizure

and excessive-force claims.

## I. The Amended Complaint

The plaintiffs are Brenda Hamilton, her father James Hamilton, and Dennis Laramore. The defendants are the Sheriff of Jackson County, Florida, in his official capacity, and deputy Stephen Smith, in his individual capacity. The amended complaint is divided into 12 counts but asserts transgressions that can be divided into the four categories listed above: failure to investigate, false arrest, excessive force, and search and seizure. The claims arise under 42 U.S.C. § 1983 and state law.

## II. The Summary-Judgment Standard

On a summary-judgment motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

## III.  Failure To Investigate

The plaintiff Brenda Hamilton asserts she was being harassed by her former boyfriend through conduct that was sometimes criminal. Ms. Hamilton alleges that

the Jackson County Sheriff's Department did not adequately investigate the crimes. The amended complaint asserts a claim on this basis.

Given an opportunity to file a notice of supplemental authority citing any case allowing a plaintiff to recover for an official's failure to adequately investigate or prosecute a crime, Ms. Hamilton abandoned the claim. This was understandable. *See, e.g.*, *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or nonprosecution of another.") (quoting *Linda R.S. v. Richard P.*, 410 U.S. 614, 619 (1973); *see also Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) ("[I]ndividual citizens do not have a constitutional right to the prosecution of alleged criminals."); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (holding that a member of the public, including a victim, has no constitutional right to have an individual criminally prosecuted).

## IV.  False Arrest

Ms. Hamilton and her father, the plaintiff James Hamilton, originally asserted that they were unlawfully detained or arrested, but they abandoned the claim at the summary-judgment hearing. This was again understandable. The claim was plainly unfounded.

What happened was this. The defendant deputy Stephen Smith, together with another officer, responded to a 911 call asserting shots were fired at Ms. Hamilton's rural property and that a dog may have been maliciously shot. When the officers arrived, Mr. Hamilton was at the scene, together with a neighbor. The neighbor was armed. The officers demanded that Mr. Hamilton and the neighbor raise their hands. The neighbor complied. Mr. Hamilton ignored the command and continued to move toward the officers. This gave the officers probable cause to detain (and indeed to arrest) Mr. Hamilton. *See* Fla. Stat. § 843.02 (making it a crime to resist, obstruct, or oppose an officer in the lawful execution of any legal duty).

Ms. Hamilton arrived as Mr. Hamilton was being detained. She got out of her car holding a gun in one hand and a beer bottle in the other. She initially refused to drop the gun. This gave officers probable cause to detain (and indeed to arrest) Ms. Hamilton.

After controlling the situation—confirming, for example, that the plaintiffs had not shot anyone's dog or committed any offense other than resisting the officers when they arrived on the scene—the officers released the Hamiltons and did not pursue charges. This does not, however, indicate their original detention was improper. It was not.

## V.   Excessive Force

Mr. Hamilton and Ms. Hamilton each assert excessive-force claims.

It apparently is undisputed that Mr. Smith shoved Mr. Hamilton aside to deal with Ms. Hamilton when she belatedly dropped her gun. Ms. Hamilton says Mr. Smith "threw" Mr. Hamilton onto the hood of Mr. Smith's patrol car and that Mr. Hamilton's head hit the windshield, causing neck and shoulder injuries. Mr. Smith next took Ms. Hamilton to the ground, forcefully putting his knee onto her back for control. He put her into the backseat of his patrol car. Ms. Hamilton says her head hit the door frame as she entered the car.

For summary-judgment purposes, Ms. Hamilton's assertions of fact are properly accepted as true. But hyperbole need not be accepted. At oral argument, Ms. Hamilton's attorney acknowledged that Mr. Hamilton was not literally "thrown" through the air. And the attorney did not endorse Ms. Hamilton's separate, fleeting statement in her deposition that the officers were "beating" Mr. Hamilton.

So the situation, as accepted for summary-judgment purposes, was this. The officers responded to a report of shots fired. Before they could sort out the situation, they were met with armed individuals, including two who resisted the officers' lawful commands. The two were verbally belligerent. One carried a

handgun and refused, at least for a time, to put it down. The officers detained the individuals who resisted their lawful commands, using force of a kind that ordinarily attends an arrest.

It was not unconstitutional for Mr. Smith to shove Mr. Hamilton aside so that he could deal with Ms. Hamilton—the individual who wielded and initially refused to drop her gun. It was not unconstitutional for Mr. Smith to take control of Ms. Hamilton, who was momentarily compliant but had shown a willingness to hold onto her gun even when told to drop it. As has been said time and again, " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973)).

So Mr. Smith did not use constitutionally excessive force. And even if the force was excessive—as it was not—the Hamiltons would be entitled to go forward only on their state-law use-of-force claim against the Sheriff, not on the use-of-force claims against Mr. Smith individually or on the federal claim against the Sheriff.

The explanation is this. First, Mr. Smith has qualified immunity on the federal use-of-force claim. Qualified immunity applies to federal damages claims against public officers and protects "all but the plainly incompetent or those who

knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See generally Carroll v. Carman*, 135 S. Ct. 348 (2014); *Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus a public officer may be held individually liable only if the officer's conduct violates clearly established law. The law on excessive force is generally well settled, but its application in these circumstances is not. Thus, for example, the plaintiffs have cited no case, and I am aware of none, involving an officer shoving an unruly individual in order to subdue another unruly individual who had belatedly dropped, and was still near, a gun.

Second, under Florida law, if a person is injured by a public employee's actionable tortious conduct, the state itself ordinarily is liable—the negligent employee is not. *See* Fla. Stat. § 768.28(1) & (6). There is, however, an exception: the employee is liable—the state is not—if the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* § 768.28(9). This record does not support a finding that Mr. Smith acted in that manner, so even if it were held that Mr. Smith committed a state-law tort—a holding that would be permissible only if Mr. Smith used constitutionally excessive force, which he did not—the liable party would be the Sheriff, not Mr. Smith individually.

Third, under federal law, a sheriff in his official capacity, like a city, can be held liable in an action of this kind based on an employee's constitutional violation only if the violation was based on the sheriff's policy or custom or if the employee is one whose edicts or acts may fairly be said to represent official policy. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). An individual officer, when deciding whether to make an arrest and when deciding how much force to use when doing so, is ordinarily not one whose edits or acts may fairly be said to represent official policy. *See, e.g.*, *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990). This record would not support a finding that a policy or custom gave rise to Mr. Smith's actions that night. Nor does the record support any other basis for a federal claim against the Sheriff. In short, this is a classic situation in which the Sheriff is *not* liable under federal law for Mr. Smith's actions.

## VI.    Search and Seizure

The last claim is asserted by the third plaintiff, Dennis Laramore. Mr. Laramore had a relationship with Ms. Hamilton. He arrived at the scene after she did but while the situation was still in flux. When asked, he truthfully told the officers that he had two guns in his truck. At Mr. Smith's instruction, the other officer entered the truck, found a long gun, and seized it. The officer did not seize a

handgun that apparently was on the front seat. After controlling the situation, the officers released the Hamiltons and returned Mr. Laramore's gun to him.

Mr. Laramore asserts that the entry into the truck and the seizure of the gun violated the Fourth Amendment. He asserts only a federal claim.

Mr. Laramore cites cases dealing with warrantless searches and probable cause. A warrant is not needed when there is probable cause to believe evidence is in a car. But here the officers were not looking for evidence, and there was no probable cause to believe they would find any. The search was not justified on this basis.

Mr. Laramore also cites *Arizona v. Gant*, 556 U.S. 332 (2009), which limits an officer's authority to search a car incident to a recent occupant's arrest. But Mr. Laramore was not arrested, and the defendants do not assert the search was justified on this basis.

Even so, the rationale for the search-incident-to-arrest doctrine is instructive. That doctrine allows officers to conduct a search of an arrested individual for officer safety. The same rationale informs other search-and-seizure principles as well. In appropriate circumstances, officers may make a protective sweep of a residence or other location for officer safety. *See, e.g.*, *Maryland v. Buie*, 494 U.S. 325, 333-35 (1990); *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995)

("Officers have a legitimate interest 'in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack.' " (quoting *Buie,* 494 U.S. at 333)).

Here the officers were dealing with armed and unruly individuals following a report of shots fired. It was dark; individuals continued to arrive; the officers were outnumbered and could not know if more individuals would be arriving; the situation was in flux. The officers understandably wished to control the guns at the scene.

Under these circumstances, based on the information known to the officers at the time, entering Mr. Laramore's unlocked truck to seize his guns, while he was nearby, may or may not have violated the Fourth Amendment. There is no clearly established law governing this situation one way or the other. For this reason, Mr. Smith is entitled to summary judgment based on qualified immunity. And, as set out above, the Sheriff is entitled to summary judgment based on *Monell.*

In reaching this conclusion, I have not overlooked the fact that the officer did not seize the handgun on the truck's front seat. Mr. Laramore says this shows that the officer was not really interested in officer safety. But that makes no sense. The far more likely explanation is that the officer simply overlooked the gun. More

importantly, the governing standard is objective; the officer's actual intent is irrelevant. *See, e.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006). The issue is only whether, under the circumstances, the officer could reasonably believe it necessary to enter the truck and seize any guns to protect the officers and the public. The officers did not know there was a gun on the front seat, so that fact does not affect the analysis. But if that fact could be considered, it would support, not undermine, the argument that entering the truck was reasonable, because it shows that a handgun was readily accessible to Mr. Laramore, who surely knew just where it was, or to anyone else who was able to get to the truck.

## VII.  Other Claims

The plaintiffs assert other claims that are unsupported by the record and add nothing to the analysis. These include negligent hiring, retention, supervision, and training. If factually supported, these could provide an answer to the Sheriff's *Monell* defense. But the theories are not factually supported.

## VIII.  Conclusion

For all that appears in this record, these officers responded promptly to a 911 call, acted reasonably to control a difficult situation, and after doing so, exercised commendable discretion by not pursuing charges against the Hamiltons and by returning Mr. Laramore's gun. For these reasons,

IT IS ORDERED:

1. The defendants' summary-judgment motions, ECF Nos. 30 and 32, are granted.

2. The clerk must enter judgment stating, "This action was resolved on summary-judgment motions. It is ordered that the plaintiffs Brenda Hamilton, James Hamilton, and Dennis Laramore recover nothing on their claims against the defendant Sheriff of Jackson County, Florida, in his official capacity, and the defendant Stephen Smith, in his individual capacity. The claims are dismissed on the merits."

3. The clerk must close the file.

SO ORDERED on January 2, 2017.

s/Robert L. Hinkle_____
United States District Judge
